**STATE of Missouri, Respondent,**

v.

**Stephen Gary WITT, Appellant.**

**No. WD 35626.**

Missouri Court of Appeals, Western District.

Jan. 29, 1985.

Mark L. Willens, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, and Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

PER CURIAM:

Defendant Stephen Witt appeals from a conviction upon jury trial of possession of more than 35 grams of marijuana, Section 195.020, RSMo Supp.1982, upon which he was sentenced to five years' imprisonment.

The judgment is affirmed.

Beginning in July 1982, officers of the Missouri State Highway Patrol, the Randolph County Sheriff's office, and the Federal Drug Enforcement Administration cooperated in keeping under surveillance a thirty-eight acre tract of land in Randolph

County upon which marijuana appeared to be growing in a cultivated manner. Earlier aerial surveillance by the Federal Drug Enforcement Administration had revealed the presence of marijuana. The marijuana was located in the northern and southern fields of the tract, but not in the center portion. The area earlier that season had been planted in corn, which by late summer had grown to approximately eight to ten feet in height. The corn had been cut around each marijuana plant to give the plant room for light and growth. Marijuana plants were not strung out throughout the whole field, but were concentrated in areas. The male plants had been removed, thus increasing the THC (tetrahydrocannabinol, resinous liquid and chief intoxicant in marijuana) value and bushiness of the remaining female plants. In addition, brush had been removed from the area surrounding the marijuana plants. A total of 182 plants was found in these two fields, weighing approximately 500 pounds. These fields were kept under almost constant surveillance, twenty hours per day, from the time of the discovery of the growing marijuana.

I

Defendant first contends there was insufficient evidence to support a finding that he knowingly possessed more than 35 grams of marijuana. On review, we determine whether the evidence and the reasonable inferences arising therefrom, viewed in a light most favorable to the State, support the guilty verdict. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976). Where the evidence is circumstantial, as it is in this case, the facts and circumstances relied upon to establish defendant's guilt must be consistent with each other and inconsistent with any reasonable hypothesis of his innocence, but, for submission to the jury, need not be absolutely conclusive of guilt or demonstrate the impossibility of innocence. *Id.* In this light, we review the evidence on this record.

During surveillance on September 7th, officers noted the presence of four people, three men and one woman, in the field, all wearing camouflage clothing, including netting over their faces. One of the men toted a sawed-off shotgun. The woman was later identified as the wife of the defendant. Defendant admitted at trial that he, his wife, and Karryl Hanson had been in or near the cornfield on September 7th, but that he, defendant, and Hanson had been inspecting the land for timber.

Also on September 7th, officers noted the presence of a machete, or corn knife, stuck in the ground in the south field at the end of a row of trees. Each day they checked the location of the machete. It remained in the same position, having been checked as late as the morning of October 4, the date of defendant's arrest.

On October 4th, an officer of the highway patrol and two deputy sheriffs of Randolph County entered the north field for their surveillance shift and observed that marijuana had been freshly cut. They walked to the south field and heard "what sounded like somebody walking through dry corn and we could hear chopping noises." They then walked to the center field to radio the sheriff's department for help but could not transmit from the low-lying area. Two officers, Belshe and Samp, returned to the south field while the third sought higher ground from which to radio the sheriff. After being summoned, 16 to 18 officers took part in surrounding the field. In the south field, Belshe and Samp found a trash bag hidden among large roots of a tree along the creek bank. Inside were two canteens, a hard plastic container of food, a paper sack, and an open box of trash bags from which several bags had been removed. The two officers then crossed the creek and hid in the horse weeds, watching to see whether someone would claim the trash bag.

A short time later, two men came walking along the dry gravel creek bed and as they came near the point where, up along the creek bank, the officers were hiding, Deputy Samp stood up, identified himself, and arrested them.

Once notified by radio of the arrest, the remaining officers who had surrounded the

field then began searching for other persons in the field. They found no one else, nor did officers in an airplane which had circled overhead for 15 minutes preceding the arrest detect from their vantage point the presence of anyone else in the field.

In the south field, approximately 150 to 200 yards from the arrest site, officers found two plastic trash bags full of freshly cut marijuana. Two or three feet from the bagged marijuana, they found the machete, or corn knife, stuck in a willow tree. The record is unclear (the trial exhibits not having been filed with this court) whether the marijuana had been cut from plants growing in the north or south field.

At the time of his arrest, defendant Stephen Witt was clad in a camouflage shirt, a white T-shirt, jeans, and a camouflage hat. The palms of his hands were dark green, almost black, and appeared to one of the officers to be sticky. Sgt. Belshe then searched the two men. In defendant's pocket he found a pair of pink-handled clippers, or wire cutters, that had a green cast to them. On his clothing and in his pockets he found cockleburs and leaves which later tests proved to be marijuana. When Sgt. Belshe pointed to the trash bag nearby containing the open box of trash bags and other items, defendant said the whole trash bag was theirs.

Tests of swabbing of defendant's palms taken at the Randolph County jail after the arrest showed the presence of THC. The pink-handled clippers also showed the presence of THC.

■ To sustain a conviction under Section 195.020 for possession of marijuana, the state must prove defendant knowingly and intentionally possessed the marijuana, and that he was aware of the presence and nature of it. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982).

> "Possession" as that term is used ... in its legal sense, means knowingly having the actual control and dominion of the [drug] to the exclusion of others.... [I]t is sufficient if the thing possessed is either carried on [defendant's] person or is in his presence and custody if the

possession is immediate, accessible and exclusive to him, (provided, however, that two or more persons may have joint possession of a [drug] if jointly and knowingly they have the dominion, control and exclusive possession described.)

*State v. Sledge*, 471 S.W.2d 256, 260 (Mo. 1971).

Defendant contends he did not have actual control and dominion over any marijuana other than the fragments found upon him, and that, under a theory of constructive possession, he did not have exclusive access to the area.

■ We note initially that defendant's claim that, because he was arrested with a companion, he did not have access "exclusive to him," is without merit, since a showing of joint possession also would sustain the verdict. *State v. Sledge*, 471 S.W.2d at 261.

■ The issue then is whether the state proved defendant, either alone or with his companions, had actual control and dominion of the marijuana to the exclusion of others. We note that it is not required that the state show actual physical custody of the contraband, or even that it be in his immediate presence.

> One may have possession of a chattel, even in the absence of actual personal custody, if the chattel is under his control and in a place where it must have been put by his act or in his behalf, or where the chattel is within his power in such a sense that he can and does command its use.

63A Am.Jur.2d Property § 37 (1984); *see also Annot.*, 91 A.L.R.2d 810 (1963).

■ We find the state's evidence was sufficient on this point. That the 16 to 18 officers who had encircled the field and then searched it found no one, and that the officers circling in the airplane overhead detected no others, combined with other circumstances to make a submissible issue of possession. Those other circumstances are, namely, the dark green color of defendant's palms and the THC residue on

them; the marijuana fragments in his pockets; the "green cast" of defendant's pink-handled clippers, the THC residue on them, and their location on defendant's person. The inference arises that defendant recognized, handled and cut marijuana.

Lastly, defendant's admission at the arrest scene that he owned the trash bag, the contents of which included an open and only partially filled box of trash bags, combined with the circumstances above to make a submissible case, and evidence sufficient to support a guilty verdict. *See State v. Hanson,* 682 S.W.2d 502 (Mo.App. 1984).

## II

■ Defendant next claims MAI–CR2d 3.42, the circumstantial evidence instruction, should have been given to the jury. This instruction must be given if appropriate *and if* requested by defendant. Notes on Use, note 1; Rule 28.02(a). Since defendant did not request it, there is no basis for error. *State v. Lehman,* 634 S.W.2d 542, 545 (Mo.App.1982).

## III

■ Similarly, defendant claims MAI–CR2d 3.66, the "mere presence" instruction, should have been given to the jury. It "should be given if requested", Note on Use. It was not requested and therefore its omission was not error. *State v. Doebert,* 659 S.W.2d 280, 283 (Mo.App.1983).

## IV

■ Defendant next contends that MAI–CR2d 32.06, the lesser-included offense instruction, should have been given even though defendant had not requested it. We must follow *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982) in which "[t]he Court further holds that a defendant may not complain about a court's failure to give a lesser-offense instruction unless the defendant requests it specifically, except in the *homicide* cases which are governed by a different standard." *Id.* at 323. The point is denied.

## V

In his fifth point, defendant claims plain error occurred when the trial judge allowed testimony into evidence which "allowed the jury to make the reasonable inference, from the context of all the evidence, that appellant had been arrested before, and, also, was evidence of other crimes not connected with the charged offense."

The testimony in question is the following:

Q: [Defense Attorney] Sergeant Belshe, at the time the arrest was made did you have a Miranda Card with you?

A: No, sir, I didn't.

Q: And who was the officer with you?

A: Perry Samp.

Q: At the time the arrest was made did Deputy Samp have a Miranda card with him?

A: Sir, I don't recall on that. I don't know.

Q: And when Mr. Witt was given the Miranda Warning it was not from the reading of a card.

A: No, sir.

Q: And you gave him the warning yourself from memory?

A: Yes, sir.

Q: Would you tell us into the record what warning you gave him?

A: Yes, sir.

Q: No, without looking at the card.

A: I'm not looking at the card. I have none in my hand, sir.

Q: I thought you were looking at your card.

A: No, I've got these nippers in my hand, sir.

Q: Okay.

A: No, when I told him I said: 'Before I ask you anything you all have the right to remain silent.' And I said, 'You know your rights as well as I do.' They agreed. *They had been read them before.* And 'You know your rights.' You have the right to remain silent. You have—Anything you say can be used against you in Court, will be used

against you. You have a right to an attorney. If you cannot afford one one will be appointed for you. If you do decide to answer any questions you may stop answering questions at any time until an attorney is appointed.'

Q: Did you tell them that anything they might say after the Miranda Warning could be used against them?

A: Yes, sir, I told them that to start with. I said, 'Anything you say can and will be used against you in a Court of Law.'

Q: And that's the complete warning you gave them?

A: Yes, sir.

[Emphasis added]

We note that defendant here complains of an alleged error of his own making, elicited by him and not objected to by him. *State v. Watson*, 607 S.W.2d 189 (Mo.App. 1980). Nonetheless, we review for plain error.

■■■ Defendant claims that the officer's statement "they had been read them before" was a reference to "other possible criminal activity of appellant." The rule of exclusion applies to evidence that defendant "has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes." *State v. Jones*, 523 S.W.2d 152, 155 (Mo.App.1975). The statement does not definitely associate defendant with another crime. No "manifest injustice or miscarriage of justice" has resulted therefrom. The trial court's omission sua sponte to take some corrective action is not plain error. Rule 30.20.

## VI

■■ In his last point, defendant claims the trial court erred in permitting Sgt. Belshe to testify as to his "rough guess" of the marijuana's street value per pound because the answer was highly prejudicial to defendant. Because trial counsel did not object to the answer or request any other relief, defendant on appeal seeks our review of the point under the plain error

standard. Rule 30.20. Defendant concedes the admission of the testimony is not reversible error, citing *State v. Lowrance*, 619 S.W.2d 354 (Mo.App.1981), a case in which testimony admitted on the value of drugs seized was upheld as relevant to, among other things, defendant's knowing and intentional possession of the drugs. *Id.* at 356–57. In the present case, the testimony was relevant to defendant's knowledge and intent in possessing the marijuana, and to his motive—profit—in harvesting it. The admission of this relevant evidence is not error, and thus no "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

Defendant closes by claiming that the error of Sgt. Belshe's "rough guess" combined with all of the errors alleged above, created an atmosphere in which a fair trial was impossible, resulting in plain error in the aggregate. We find the trial court did not err, and thus no plain error occurred. The point is denied.

We affirm the judgment of conviction.