**STATE of Missouri, Respondent,**

**v.**

**Elbert HOLLY, Jr., Appellant.**

**No. WD 36163.**

Missouri Court of Appeals,
Western District.

July 16, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

Application to Transfer Denied
Oct. 16, 1985.

shown in a photo array, was in jail at the time of the shooting; and in permitting the state to make closing arguments asserted to have been prejudicial.

The events giving rise to the charges against appellant are these: On July 2, 1983, the victim, Fayodis Thomas, went to a party given by Judy Phillips, an old school friend, at 39th and Paseo, arriving at 11:45 p.m. Thomas went into the basement of the party where he danced a while and drank, at most, three beers, going then outside, where he sat on the steps outside the apartment building to cool off from dancing. Appellant then came down a little alleyway behind a store walking around and talking crazy, saying, "I'm a pimp, I'm a pimp. If I'm not a pimp, I want you to say I'm not a pimp." Appellant threw his money on the ground and it blew over by Thomas who picked it up saying, "Here's your money." Appellant said, "No, I want all of my money", and Thomas told him it was just what blew on the ground, but appellant would not take it, so Thomas put it back on the ground. Appellant swung at him and Thomas swung back hitting him on the side of the face. A friend then broke up the fight, after which appellant said, "Everything is all right", tried to shake his hand, and came with his right hand and shot Thomas in the side. Thomas ran with appellant chasing him and clicking the gun several times. Thomas was not armed, and he was taken to Truman Medical Center after the shooting.

Appellant's first point is that the trial court erred in denying his motion to suppress out-of-court and in-court identification by Thomas because (A) he was unable to make an identification when a first array of six photographs was shown to him, but was able to identify appellant in a second array where four photographs were displayed, and the police informed Thomas that a suspect was in the second array, which procedures resulted in a substantial likelihood of irreparable misidentification. And (B) the state did not show by convincing evidence that Thomas' identification had a basis independent of suggestive po-

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Thomas Carter, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

PRITCHARD, Judge.

By the verdicts of a jury, appellant was found guilty of assault in the first degree, and armed criminal action. The trial court sentenced him, respectively, to 30 years and 10 years, to run concurrently, in the Missouri Division of Adult Institutions.

The sufficiency of the evidence to sustain the conviction is not challenged. Rather, appellant attacks the evidence of identification of him as the culprit; that the court erred in permitting the state to introduce evidence to meet defense surrebuttal evidence, that a person, identified by witness Judy Phillips as being the assailant as

lice procedures in that he lacked the opportunity to observe the assailant at the time of the crime and showed uncertainty in his ability accurately to describe the suspect.

The evidence concerning the identification is this: As Thomas sat on the steps outside the apartment building he observed appellant walking around and talking for about twenty minutes. The lighting was good. He saw appellant close up, about a foot away, when he tried to hand him his money for about five seconds. He described appellant's features and clothing as he appeared at that time. About a year before, he had seen appellant for about five seconds standing in front of a liquor store drinking as Thomas was walking past, but he did not know his name. He called Judy after the shooting to find out what his assailant's name was, and learned it was E.J. When Thomas entered the hospital after the shooting, he told a nurse that he consumes about four or five beers and two or three pints of gin per day, and he had a few drinks (two or three beers) that night.

On July 29, 1983, less than a month after the shooting, Thomas was interviewed at the police station. Prior to that time, after he had learned the initials "E.J." from Judy, he had viewed six photographs but was unable to pick out his assailant. On July 29th, he viewed four photographs, and acknowledged that the officer told him they had a suspect among them, but did not tell him which one it was. Appellant was picked out from the array of photographs, and in court he was identified by Thomas as being the man shown in the photograph, and as the one who assaulted him. Thomas maintained that the officer's statement as to a suspect being in the photographic array did not influence him.

■ Although Thomas sought out the name of his assailant from Judy Phillips just prior to being shown the second set of photographs, and she testified that people were guessing as to who shot him and that "someone put up the name of E.J." which she gave to Thomas, there is nothing in those facts that would give rise even to an inference that the circumstances of picking out appellant's photograph was suggestive. The name of the assailant was not the significant factor of the identification where Thomas remembered his face all along. He had never known appellant by name but had seen him once before. Cf. *State v. Gates,* 637 S.W.2d 280, 281 (Mo. App.1982), where the sister accomplice of defendant was known to the stealing victim, but not by name, which fact, through a friend of his who was acquainted with the sister, led to defendant's arrest; *State v. Robinson,* 591 S.W.2d 18, 20 (Mo.App. 1980), where the victim was shown a group of photographs with names of individuals on them, and he picked out defendant as being an unusual person, not remembering the writing on them. No one suggested which picture the victim would choose, and even if there were such suggestions, the court said, there was an independent basis for the in-court identification.

■ The police officer's statement was at best innocuous—he did not suggest what person Thomas should pick out. Besides, it was held in *State v. Gregory,* 630 S.W.2d 607, 609 (Mo.App.1982), citing *State v. Dayton,* 535 S.W.2d 479, 488 (Mo.App. 1976), that it is implicit in lineup procedure (analogous to photographs) that among the persons in the lineup is one who is suspected by the police as the perpetrator of the crime. The Gregory case held also that an unexcusable statement by a police officer before a lineup ("that they had the right man this time") did not render the identification inadmissible in that the witness had an independent basis for her in-court identification.

■ Under the facts here, the in-court identification was valid under the precepts of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), adopted in *State v. Higgins,* 592 S.W.2d 151, 160[13, 14] (Mo. banc 1979). Thomas observed appellant for twenty minutes in the alley, and at close range, a fact, for five seconds, in good lighting and thus had the opportunity to observe him at the time of the crime.

Thomas' degree of attention was supplied by the close range fight, and the fact that he picked up appellant's money from the ground and offered it to him, during which time appellant was looking at him. Thomas did give a description of his assailant, but that description seems not to be related to appellant's personal description at trial. This discrepancy is, however, unimportant, considering the other factors of the identification. At the confrontation, Thomas readily picked out appellant at the second array of photographs—he could not do so on the first array. This confrontation, with photographs, was done with certainty by Thomas. The length of time between the date of the crime and the identification from the photographs was less than one month, which is certainly not an unreasonable delay. All of the foregoing demonstrates that Point I, and its subpoints, are without merit, and they are overruled.

█ Ms. Judy Phillips testified for the state at trial that one of the men who was in the fight back of her apartment was appellant, and that he fired a shot at the victim, Thomas. On surrebuttal, the defense presented its investigator Charles Ross who testified that he showed Judy an array of eight photographs, and she picked a Number 153645 photograph as depicting the man she believed to have done the shooting, which man was not appellant. Appellant's photograph, Number 151038, was included in the array. Ross did not know the name of the person picked by Judy as the assailant. The state then produced records from the Kansas City Police Department, and the Missouri Department of Corrections showing that the person identified to Ross was one Gary Lovelady who was in the Jackson County Jail at the time of the shooting [and thus could not have been the assailant]. In Point II, appellant contends that the state's surrebuttal evidence was inadmissible because irrelevant and immaterial in that it did not disprove or rebut that Judy was unable to identify appellant in a photo array and in fact chose someone other than appellant as the assailant. Ross' testimony had the effect of impeaching Judy's in-court identifi-

cation of appellant as the assailant—going to her credibility as an identifying witness, which it certainly did. The state's evidence that the person Judy identified from the photographs, Lovelady, could not have been at the scene of the assault and thus could not have committed it, was relevant and material, as reinforcing her in-court identification of appellant as the assailant. The trial court noted that appellant had injected the issue into the case and "the State had no way of knowing that the issue would be brought up." The trial court therefore did not abuse its discretion in allowing the state to present the evidence. *State v. Blair,* 638 S.W.2d 739, 757[25–27] (Mo. banc 1982). Point II is overruled.

By his last point, appellant claims reversible error in his contention that the trial court erred in permitting the state to make allegedly offensive statements during closing and rebuttal argument. The consideration of this point will be limited to those set forth in the point. The argument portion of the brief lists other of the state's arguments in detail but nowhere is it said therein why or wherein the trial court erred in allowing them.

█ The following prosecutorial argument comments are said to be speculative and inflammatory and prejudiced appellant in that they aroused in the jurors fear and personal hostility toward him. The state first said it was the state which brought the case, then: "And why is that? Because every time a member of this community is victimized, we all suffer, so just because on this occasion the target was Fayodis Thomas at 39th and Paseo, it could have been someone else, someone dear and close to us. And so for that reason the law says you can't shoot another human being when his station in life puts him at 39th and Paseo or it puts him on 89th and Ward Parkway." This argument relates to the necessity of law enforcement against all persons, regardless of station in life, victims or place of residence. *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970). State's counsel mentioned Instruction No. 9 which told the jury that evidence of prior felonies could be considered only for the purpose of

appellant's believability and the weight to be given his testimony. Counsel argued: "And Elbert Holly, he tells you he has two prior felony convictions and a misdemeanor. Instruction No. 9 addresses that. It says you can determine his testimony and the believability to give to that testimony by looking at his prior convictions, and that gives you a tendency whether you want to believe when he says on this occasion when he's been convicted of offering violence to a jail guard, that on this occasion he did not offer violence to Mr. Fayodis Thomas, you can consider that in whether you want to believe him". This was only a permitted comment on appellant's credibility as a witness. Although the point does not cover the whole argument of state's counsel, it has been examined. It did not personalize the jury in the sense that it placed them in the victim's predicament so as to implant fear if appellant were acquitted under the *Raspberry* case, supra, page 172. Point III is overruled.

The judgment is affirmed.

All concur.