**STATE of Missouri, Respondent,**

v.

**Joe L. EALEY, Appellant.**

**No. WD 38307.**

Missouri Court of Appeals,
Western District.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1987.

James L. McMullin, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

PRITCHARD, Presiding Judge.

In a trial to the court, a jury being waived, appellant was found guilty of robbery in the first degree, and to have been a persistent offender, and was sentenced to 30 years imprisonment in the Division of Corrections.

The sufficiency of the evidence to sustain the conviction is not questioned. On May 26, 1985, at 5:30 a.m., a large black male entered the Holiday Inn at 11832 Plaza Circle, Kansas City, Missouri, Platte County, and pointed a gun at Marla Gail Mackey, an employee. He ordered her to awaken another employee, Connie Jo Butterworth, and ordered the latter to open the safe, which she did, and at his request, put the money in a navy blue garment bag with red and white trim which he had. Both women were told to go to the back room and lie on their stomachs, and their hands were tied behind their heads with Ms. Mackey's pantyhose. Ms. Butterworth freed her hands, called the manager, and at 5:38 a.m., she called the police, describing the robber as being a tall black male, wearing a blue windbreaker, black pants and shoes, glasses and a hat, not giving its color. Officer Houston responded to the call, arriving at the Holiday Inn at 5:50 a.m., where he contacted the two women, learning that the robber had covered his face with a yellow hand towel. Houston then informed the dispatcher of the description and that about $700 had been taken and placed in a blue suit bag with red trim. The dispatcher broadcasted the information to field officers.

Officer Thompson, driving northbound on I-29, heard the police dispatch at 5:44 a.m., and three minutes later saw an old model Buick being driven by a black male wearing a red cap and blue jacket, and radioed other officers that he wanted someone to intercept the vehicle and get a better look. Officer Bigler heard the broadcast, and saw the car driving south on I-29. Realizing that the occupant matched the description of the robbery suspect, Bigler followed it to get its license number. Officer Jarowitz, in a paddy wagon, followed Bigler who observed the occupant bending over as if he was taking something out of or putting something underneath the driver's seat. Jarowitz decided to stop the vehicle based upon the matching description which had been broadcasted, that the car was coming from the general direction of the area where the robbery had occurred a short time before, and the furtive actions seen by Bigler. The car was stopped at Adrian and I-29 at 5:52 a.m., with Bigler just behind and Jarowitz behind him. The driver exited the vehicle and the officers saw he was wearing a blue windbreaker, a red cap, yellow tinted glasses and black slacks and shoes. As the man was producing his identification, Jarowitz approached the driver's side of the vehicle and observed through the window a blue garment bag on the floor of the passenger side of the front seat, a navy blue full-brim hat on the dashboard.

Officer Thompson, who had arrived, and Bigler also, observed the blue clothing bag with money in it and a washcloth with an elastic band on it lying between the seats. Jarowitz looked under the driver's seat for a weapon and found a stack of money there. No weapon was found. Appellant was given his Miranda rights, handcuffed, searched and transported to the police station.

On the day of the robbery, Detective Kroog prepared four photographs, with one of them appellant, to show to the victims, and which were shown to the women that day, they being advised that a suspect was in custody. They testified that they felt upset, nervous and pressured when they viewed the photographs, and neither was able to pick a suspect from the photographs, but both believed they could pick one from a lineup. Kroog then prepared a videotaped lineup later that day in which appellant and three other black men wore gowns and caps. Ms. Mackey saw the tape four days after the incident, then feeling calmer, more relaxed and less pressured. Kroog played the tape in its entirety once to the two women and then again by holding a card over the subject's mouth and nose to simulate a mask.

Ms. Mackey positively and without question identified man No. 2 as the robber by his body build, height, weight, lack of hair under his cap, the size of his face, his eyes, and his voice, which was soft and mellow. Ms. Butterworth also identified man No. 2 as the robber, based on his body build, height, weight, cheekbones, eyes, lack of hair behind his ears and his soft, quiet

voice. Neither of the women recognized any person in the lineup as having been in the previously seen photographs. Kroog testified that appellant was man No. 2 in the lineup.

Some doubt exists in view of the court's rulings on the testimony, as to whether the women adequately identified the same $700 as that taken from them, but both identified the bag in which the money was placed at the time. Ms. Mackey identified the hat appellant was wearing. Ms. Butterworth identified the terrycloth mask appellant was wearing, and that he was wearing glasses similar to those produced at trial.

■ In his first point, appellant asserts that the trial court erred in denying his pretrial motion to suppress evidence, taken from his car when it was stopped by police, and consisting of a bag of money, a suit bag, washcloth mask, a "gangster-style" hat and a pair of yellow-tinted sunglasses. He argues that there was a lack of probable cause to stop him and make an arrest. Appellant, however, did not keep the grounds for his pretrial motion alive by objecting to the evidence at trial. Indeed, he affirmatively stated that there was no objection to the admission of the exhibits into evidence. In this situation, nothing as to the contention is presented for review because of the express, affirmative waiver of any objection at trial, and the matter will not be considered under the plain error rule, Rule 30.20. See *State v. Starr*, 492 S.W.2d 795, 801[8] (Mo. banc 1973); *State v. Adams*, 552 S.W.2d 53, 54 (Mo.App.1977) [jury-tried cases]; and *State v. Hunter*, 530 S.W.2d 432, 433[2] (Mo.App.1975) [a court-tried case]. Point I is overruled.

■ In Point II, it is contended that the trial court erred in admitting the identification testimony of the two robbery victims and objection was made to each witness' testimony at trial. Appellant was granted additional time to file a motion for new trial, but no such motion is contained in the legal file. In a court-tried criminal case, however, no motion for new trial is necessary to preserve any matter for appellate review. Rule 29.11(e)(2).

■ Appellant says that the video lineup was improper and so highly suggestive as to be unconstitutionally impermissible in that he was the only person in *both* the photographic lineup and the video lineup; and the officers told the witnesses before the video lineup that they had a suspect in custody that they believed to be the robber.

In *State v. Trimble*, 654 S.W.2d 245, 256[19] (Mo.App.1983), a charge was made that the identification procedures were unduly suggestive because defendant was the only person in both a photographic display and a lineup. The two young victims of the crimes identified defendant in both the photos and the lineup. The court found that the procedures did not violate *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), by undermining the reliability of the eyewitness identification as to violate due process. Here, in contrast, witnesses Mackey and Butterworth stated that they could not identify appellant from the photographs, but stated that they believed that they could pick the suspect from a lineup. Compare also *State v. Burns*, 581 S.W.2d 590, 594[6] (Mo.App.1979), where the witness identified defendant both from police photographs and in a lineup, held not to be the result of improper suggestion or influence; and *State v. Charles*, 612 S.W.2d 778, 780 (Mo. banc 1981), where defendant's complaint was that one Quinn, who was one of two men in two photographs, was omitted from the lineup, held not to be "a very substantial likelihood of irreparable misidentification". Such is the case here.

■ As to the second contention of Point II, it was held in *State v. Green*, 635 S.W.2d 42, 45[8] (Mo.App.1982), that a policeman, requesting witnesses to come in for a lineup identification, said the police had a "possible suspect" had no significance. In *State v. Overstreet*, 694 S.W.2d 491, 495[7] (Mo.App.1985), it was held that it was not improper for the police to inform the identifying witnesses that the police have a suspect which they might be able to identify. In this case, no particular suspect was pointed out. The identifying witnesses here had ample opportunity to observe ap-

pellant at the scene of the crime, and their lineup identification was had within a few days thereafter. All of the five elements of reliability of identification of *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); and *State v. Higgins,* 592 S.W.2d 151, 160 (Mo. banc 1979), are here satisfied. Point II is overruled.

The judgment is affirmed.

All concur.