STATE of Missouri, Respondent,

v.

Sylvester HORNBUCKLE, Appellant.

No. 70724.

Supreme Court of Missouri,
En Banc.

April 18, 1989.

Rehearing Denied May 16, 1989.

Daniel L. Sayle, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Justice.

Sylvester Hornbuckle appeals from his convictions by jury on two counts of robbery in the first degree, § 569.020, RSMo 1986, four counts of armed criminal action, § 571.015, RSMo 1986, and two counts of kidnapping, § 565.110, RSMo 1986. The trial court found appellant to be a persistent offender and sentenced him to six thirty-year and two fifteen-year terms of imprisonment, to be served consecutively, for a total of 210 years in prison. The Missouri Court of Appeals, Eastern District, reversed and remanded for retrial. This Court granted transfer. The judgment entered upon the verdict of the jury is affirmed.

Viewed in the light most favorable to the verdict, the evidence at trial established the following: During the evening of February 1, 1986, Robert and Emily Sudhoff stopped at the Venture Department Store on Page Avenue in the City of Overland in St. Louis County. At approximately 8:00 p.m., the couple returned to their car which was parked in the store parking lot. Mr. Sudhoff unlocked and opened the front passenger door for his wife, then proceeded around the rear of the car toward the driver's side. Mrs. Sudhoff seated herself in the car and released the power lock on the car's doors. As she fastened her seat belt, Mrs. Sudhoff looked over her shoulder and saw that a stranger had entered the back seat of the car and was pointing a gun at Mr. Sudhoff's head. The man announced that it was a holdup and demanded the couple's valuables. Mr. Sudhoff gave the man his watch, a diamond ring and a coin purse. The intruder ordered Mrs. Sudhoff to give him her purse but she had not brought one with her. He then asked for her rings. As Mrs. Sudhoff handed him a dinner ring, she turned and looked directly at him.

Still holding the gun to Mr. Sudhoff's head, the intruder ordered Mr. Sudhoff to drive out of the parking lot. They left the lot and proceeded a short distance down an access road toward Page Avenue. The man then instructed Mr. Sudhoff to stop the car and ordered the Sudhoffs out. The man also exited the car. As Mrs. Sudhoff watched, the man frisked Mr. Sudhoff, taking his wallet, then reentered the car and drove off, abandoning the Sudhoffs on the access road. A short time later, a car stopped and offered assistance. The motorist then took the Sudhoffs back to the Venture store, where they contacted a security guard who summoned the police.

Two evenings later, in an assault similar in style, appellant was arrested while attempting to rob a woman in the parking lot of a Venture store in the City of St. Louis. Accounts of the City robbery in the local newspapers identified appellant by name. Friends of the Sudhoffs suggested that the suspect in the City robbery might also be responsible for robbing the Sudhoffs.

On February 10, the Sudhoffs were called to the Overland Police Department to view a photographic lineup. The police indicated that they believed they had a suspect in the case, but told the Sudhoffs nothing else prior to or during the identification session.

The Sudhoffs viewed the photo array separately. Based on her recognition of appellant's face, Mrs. Sudhoff selected appellant's picture from an array of approxi-

mately thirty photographs. To confirm her identification of appellant Mrs. Sudhoff signed and dated the back of the photograph.

Although Mr. Sudhoff had his back to the assailant throughout the robbery and never saw the man's face, he also viewed the photo array. Mr. Sudhoff claimed that he selected appellant's picture from the array based solely on the description given to him by his wife.

The photograph of appellant used in the array was the arrest photo from the City of St. Louis robbery. The photograph bore appellant's name and date of arrest as well as the standard descriptive data.

Nine days later, on February 19, the Sudhoffs attended a live five-person lineup at the downtown police station in the City of St. Louis. The Sudhoffs viewed the lineup separately. There was no information or prompting from the police. Mr. Sudhoff selected appellant from the lineup based on his recognition of appellant's voice. Mrs. Sudhoff selected appellant from the lineup based on her recognition of appellant's face as well as recognition of his voice. Both Sudhoffs had previously noted that the assailant spoke with a very soft, distinctive voice.

Appellant chose not to attend his trial or testify in his own defense. Consequently, the Sudhoffs made no positive in-court identification of appellant. At trial, Mrs. Sudhoff denied either seeing the name Sylvester Hornbuckle on appellant's photograph prior to selecting it from the array, or any familiarity with the name through newspaper accounts or otherwise prior to the police telling her that the man she had identified was Sylvester Hornbuckle. Mr. Sudhoff testified that he may have been familiar with appellant's name prior to viewing the photo array, but that he had not noticed the name on the photograph. The jury found appellant guilty as charged.

On appeal, appellant raises five claims of error. Appellant asserts that the trial court erred by: (1) admitting into evidence the out-of-court identifications by the Sudhoffs; (2) allowing testimony from a state's witness implying the commission of other crimes by appellant; (3) overruling appellant's pretrial *pro se* motion to discharge his attorney and his attorney's corresponding request to withdraw; (4) overruling appellant's motion for a judgment of acquittal on the grounds that there was insufficient evidence to sustain a conviction; and (5) denying appellant's motion for a mistrial when, during deliberation, the jury mistakenly received an exhibit.

I.

In his "Points Relied On," appellant contends that the trial court erred in admitting testimony regarding the Sudhoffs' out-of-court photograph and lineup identification of appellant because they were made under circumstances so inherently suggestive and conducive to mistaken identification that appellant's right to due process was violated. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Specifically, appellant argues that the totality of the circumstances rendered the photographic identification so suggestive as to be unreliable and therefore inadmissible. Appellant further argues that the improper photo identification so tainted the later live identification that testimony regarding the live identification should have been excluded as well.

■ Appellant has failed to preserve the issue for appellate review. Rule 29.11. At trial, appellant made only a limited hearsay objection to Mr. Sudhoff's testimony that he selected appellant's picture based on the description given to him by his wife. He objected to no other identification testimony by the Sudhoffs. He did not object to the admission of the exhibits of the photo array and lineup. In his motion for new trial, appellant merely complained that the trial court erred in refusing to instruct the jury on the dangers inherent in and the unreliability of eyewitness testimony, and this allegation was made with reference solely to Mrs. Sudhoff's testimony. *See State v. Moiser*, 738 S.W.2d 549, 562 (Mo. App.1987).

■ Since the error of which appellant complains is not preserved for review, ap-

pellant bears the burden of demonstrating that the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc 1986), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Relief under plain error, therefore, requires that appellant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *State v. Moore*, 731 S.W.2d 351, 354 (Mo. App.1987).

▋ The state submits that, given this threshold, plain error cannot exist in the present case since admission of the identification testimony, particularly the testimony of Mr. Sudhoff, helped appellant's defense more than it hurt. Specifically, the state argues that the weaker testimony of Mr. Sudhoff provided a vehicle for attacking the stronger testimony of Mrs. Sudhoff, raising questions about the accuracy of the identifications generally, the motives of the Sudhoffs and the zeal with which the police pursued the case. In this context, the state argues, admission of the testimony did not result in manifest injustice.

In part because of the rationale tendered by the state, but primarily because the bulk of the identification testimony was in fact admissible, appellant has failed to establish the existence of plain error.

▋ Reliability, rather than suggestiveness, is the "linchpin" in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Story*, 646 S.W.2d 68, 71 (Mo. banc 1983). Reliability is to be assessed under the totality of the circumstances. *Id.* The factors to be considered include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confronta-

tion. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Id.*

▋ In sum, the crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness. *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979). Identification testimony will be excluded only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. *Id.*

With regard to the photographic identification, appellant contends that the totality of the circumstances, including the newspaper accounts of the City robbery which identified appellant by name, the telephone calls from the Sudhoffs' friends suggesting that the same man was responsible for both robberies, an indication by the police that the suspect in the City robbery was also a suspect in their robbery, together with the fact that the photograph of appellant in the photo array was from his recent City arrest and bore his name and the arrest date, rendered the photographic identification so suggestive as to be unreliable and therefore inadmissible.

Allegations of suggestiveness similar to those made by appellant have been considered unavailing in numerous other cases. For example, a lineup was not rendered unduly suggestive merely because the victim anticipated the presence therein of his or her assailant. *State v. Stephens*, 708 S.W.2d 345, 348 (Mo.App.1986); *State v. Bolanos*, 743 S.W.2d 442, 445 (Mo.App. 1987). Similarly, a lineup was not rendered impermissibly suggestive simply because the police, in requesting a witness to come in for a lineup identification, stated that they had a suspect which the witness might be able to identify. *State v. Ealey*, 727 S.W.2d 165, 167 (Mo.App.1987); *State v. Holly*, 697 S.W.2d 250, 252 (Mo.App.1985). In addition, lineups were not found to be unduly suggestive notwithstanding exposure of the witness to newspaper or tele-

vision reports, including reports which contained a picture of the defendant. *See State v. Lawrence,* 700 S.W.2d 111, 112 (Mo.App.1985); *State v. Bullington,* 684 S.W.2d 52, 54 (Mo.App.1984); *State v. Robinson,* 591 S.W.2d 18, 20 (Mo.App.1979). In the same vein, lineups have been held non-suggestive when friends or family suggested to the witness that the defendant was responsible for the crime or where they provided the witness with the defendant's name. *See State v. Lawrence,* 700 S.W.2d at 112; *State v. Holly,* 697 S.W.2d at 252. Nor was an identification inherently suggestive when, of the various suspects presented to the witness, the defendant alone was identified by name. *State v. Davis,* 507 S.W.2d 32, 34 (Mo.App.1974). Finally, and most closely on point, a photographic lineup was not considered unduly suggestive even though the defendant's name, height and weight were listed on his photograph and the array was presented to the witness after the defendant had been publicly reported as a suspect. *State v. Robinson,* 591 S.W.2d at 20. (*See also, State v. Glass,* 703 S.W.2d 81, 82 (Mo.App. 1985) where, at the time of the identification, the victims may have had available for reference photographs of the defendant they had taken personally).

Contrary to appellant's contentions with regard to the photographic lineup, therefore, it cannot be said as a matter of law that the photographic lineup was impermissively suggestive. While there are factors which may have operated to cloud identification, within the parameter of impermissible suggestiveness, the extent to which the perception and memory of a witness is influenced by outside sources is a question for the trier of fact. *See State v. Lawrence,* 700 S.W.2d at 112; *State v. Davis,* 507 S.W.2d at 34. Here Mr. and Mrs. Sudhoff were subjected to full cross-examination regarding the alleged suggestive influences. The witnesses testified that their identification was not swayed by the extrin-

sic events. The weight to be given such testimony was a question for the jury.

▮ Moreover, given that reliability, and not suggestiveness, is the key to admissibility, it is clear that the testimony of Mrs. Sudhoff was reliable under the totality of the circumstances as articulated in *Manson v. Brathwaite.* Mrs. Sudhoff had several opportunities to view appellant at close range during the robbery and kidnapping. She made a conscious effort to remember his face. Her prior descriptions of the assailant were consistent with appellant's appearance. Her identification was certain and was made within several days of the crime. Even if one assumed, arguendo, that there were elements of suggestiveness in the photographic identification, they were clearly insufficient to corrupt the reliability of Mrs. Sudhoff's identification. Her identification testimony was therefore admissible.

▮ It is equally clear, however, that, considerations of suggestiveness aside, Mr. Sudhoff's identification was significantly less reliable than that of his wife. Arguably, Mr. Sudhoff's photographic identification testimony should not have been admitted.[1] Other than appellant's voice, a basis which could not be utilized in the photographic identification, Mr. Sudhoff had no other source upon which to base his identification of appellant as the assailant. The weakness in Mr. Sudhoff's testimony, however, was made apparent on both direct and cross-examination. At trial, Mr. Sudhoff repeatedly acknowledged that he never saw his assailant's face. Mr. Sudhoff further acknowledged that his photo identification was based solely on his wife's description of the assailant. Moreover, contrary to Mr. Sudhoff's testimony, the supervising police officer testified that Mr. Sudhoff was not able to identify anyone from the photo array. There was no confirming signature of Mr. Sudhoff on the back of appellant's photograph. Overall, Mr. Sudhoff's testimony detracted from,

1. Appellant's sole complaint with respect to the identification testimony is that the testimony of both Sudhoffs was inadmissible as a product of an impermissibly suggestive identification procedure. Appellant raises no claims with respect to the testimony, individually, nor offers any basis for its exclusion other than the allegedly suggestive identification.

rather than bolstered the testimony of his wife and the identification of appellant generally. Questions regarding the ability of Mr. Sudhoff to identify appellant with certainty, not to mention Mr. Sudhoff's veracity, were clearly put before the jury. *See State v. Little,* 674 S.W.2d 541, 544 (Mo. banc 1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). Under these circumstances it cannot be said that appellant was manifestly prejudiced by Mr. Sudhoff's testimony. *Cf. State v. Valentine,* 584 S.W.2d 92, 97 (Mo. banc 1979); *State v. Mandina,* 541 S.W.2d 716, 719 (Mo.App.1976). Any error in admitting the testimony, therefore, did not result in a miscarriage of justice.

■ With respect to the live lineup identification, appellant contends, in essence, that after the photographic identification, the Sudhoffs went to the live lineup with the intent to identify the man who looked like Sylvester Hornbuckle, not the man who robbed them. There is no evidence that the live lineup was impermissibly suggestive. The mere fact that the Sudhoffs participated in a prior photo identification did not automatically result in the live lineup being suggestive, notwithstanding that appellant was the only person who appeared in both lineups. *State v. Robinson,* 641 S.W.2d 423, 427 (Mo. banc 1982). The Sudhoffs were cross-examined on this allegation of suggestiveness, which they denied, and it was within the province of the jury to assess their credibility on that issue. *See State v. Little,* 674 S.W.2d at 544; *State v. Stephens,* 708 S.W.2d at 348.

■ Moreover, the lineup identification of both Mr. and Mrs. Sudhoff had a basis for reliability independent of the prior photo display. As previously noted, Mrs. Sudhoff's identification of appellant was clearly reliable under the totality of the circumstances and was therefore admissible. Her identification of appellant at the live lineup through recognition of his voice further added to the reliability.

As for Mr. Sudhoff, while his sole basis for independent identification was his recognition of appellant's voice, that alone was sufficient to make his testimony admissi-ble. *State v. Bolanos,* 743 S.W.2d at 442; *State v. Bell,* 300 S.W. 504, 505 (Mo.1927). Factors for assessing the reliability of Mr. Sudhoff's voice identification in the present case included his opportunity to hear the assailant's voice numerous times during the crime, his high degree of attention and close proximity to the speaker and the level of certainty he exhibited when identifying the voice of his assailant from the voices of the other men in the lineup. With a sufficient degree of reliability established, the weight to be given Mr. Sudhoff's voice identification became a question in the province of the jury. *Id.*

In view of the foregoing, appellant has failed to show manifest prejudice affecting his substantial rights.

## II.

Appellant contends that the trial court erred in denying his motion for mistrial following certain comments by police Detective Ray Papish, one of the state's witnesses. Prior to trial, appellant had filed a motion *in limine* seeking to prevent the state from informing the jury that appellant had a number of aliases. The trial court sustained the motion, excluding references to all aliases except the alias "Mike Beck," which appellant had given to police when arrested for the City robbery. During cross-examination, as appellant's counsel questioned Detective Papish about an incident in which appellant signed the name "Mike Beck" on a lineup card nine days after he had made a voluntary statement which he had signed "Sylvester Hornbuckle," the following exchange took place:

[Appellant's counsel]: Why in the world, officer—he signed Sylvester Hornbuckle on this thing ten days prior, so when he signed Mike Beck on this picture or on this card that he held up?

[Detective Papish]: That's just one of his aliases he used frequently.

Appellant's counsel immediately objected, asked that the answer be stricken and moved for a mistrial. The court overruled the motion, finding that the answer was within the purview of the question asked by appellant's counsel. Later in the cross-

examination, appellant's counsel asked about the significance of appellant's willingness to give a statement. Detective Papish replied: "Sylvester has always been willing to talk." Appellant's counsel again moved for a mistrial, claiming that the answer indicated appellant's involvement in other crimes.

■ Criminal defendants have a right to be tried only for the offense for which they are charged. *State v. Williams*, 652 S.W.2d 102, 110 (Mo. banc 1983). Proffered evidence will run afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes. *State v. Pilchak*, 655 S.W.2d 646, 649 (Mo.App.1983).

The decision to declare a mistrial, however, rests largely within the discretion of the trial court since the trial court is in the best position to determine what prejudicial effect, if any, an incident has on the jury. *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987). The trial court's decision will not be disturbed absent an abuse of that discretion. *Id.*

■ In the present case, the witness' vague references cannot be characterized as clear evidence associating appellant with other crimes. *See State v. Howard*, 714 S.W.2d 736, 738 (Mo.App.1986); *State v. Stubenrouch*, 702 S.W.2d 926, 930 (Mo.App.1985); *State v. Witt*, 685 S.W.2d 266, 271 (Mo.App.1985).

Moreover, the trial court did not abuse its discretion in refusing to grant a mistrial, because the remarks were brought into evidence by appellant's own, open-ended questions. *State v. Ray*, 647 S.W.2d 522, 524 (Mo. banc 1983).

Finally, the remarks cannot be said to have prejudiced appellant since earlier testimony intimating appellant's criminal past had already been admitted without objection. Specifically, the fact that appellant had been booked as "Mike Beck" when arrested for the City robbery (admitted to establish a common scheme or plan) was already in evidence, as was the information, again elicited by appellant's counsel, that appellant had been convicted of the City robbery and sentenced to seventy-two years in prison.

### III.

Appellant contends that the trial court erred by overruling his *pro se* motion to discharge his attorney and his attorney's corresponding request to withdraw, both of which were made the day of trial. Appellant claims that an irreconcilable conflict had arisen between himself and trial counsel, manifested by a total breakdown in communication, and that the trial court did not properly investigate his assertion that counsel was not prepared to go forward with trial. Accordingly, appellant argues, the trial court's ruling denied him effective assistance of counsel.

■ The ultimate determination as to whether a defendant should be allowed to discharge his attorney, or whether defense counsel should be allowed to withdraw, are matters within the discretion of the trial court. *State v. Turner*, 623 S.W.2d 4, 11 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). Appellate courts will not interfere with a trial court's exercise of discretion unless it clearly appears that it has been abused, and the appellate court will indulge every intendment in favor of the trial court. *State v. Richardson*, 718 S.W.2d 170, 172 (Mo.App.1986).

■ To warrant substitution of counsel, a defendant must show "justifiable dissatisfaction" with appointed counsel. *State v. Gilmore*, 697 S.W.2d 172, 174 (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). To obtain a change of attorney on the eve of trial, a defendant must demonstrate an irreconcilable conflict with his appointed counsel. *State v. Turner*, 623 S.W.2d at 11; *State v. Richardson*, 718 S.W.2d at 173. To demonstrate an irreconcilable conflict, the defendant must come forward with evidence that shows a total breakdown in communication between defendant and his attorney. *Id.* Such an allegation may not be grounded on subjective, unsubstantiated feelings, but must be rational. *State v. Schubert*, 747

S.W.2d 165, 170 (Mo.App.1988). In assessing a trial court's decision on such a claim made on the eve of trial, the trial court's discretion, tempered as it is by the public's need for effective administration of justice, will not be lightly disturbed on appeal, particularly when it appears the accused was not denied skillful and competent representation. *State v. Turner*, 623 S.W.2d at 11.

 In the present case, appellant indicated to his counsel on the day before trial that he was willing to plead guilty to the charges pursuant to a plea bargain. The next morning, however, appellant changed his mind and asked to go forward with trial. Immediately before trial, appellant submitted a *pro se* motion to the court requesting a change of attorney; he claimed generally that counsel's representation was defective. Verbally, appellant stated that counsel had told him certain witnesses had been directed to appear at trial, but appellant's own conversations with these witnesses indicated that they had not received any messages from appellant's counsel. The trial court then asked: "Is there anything you want to tell me about your motion, at this time, other than what is in writing here?" Appellant stated that he had nothing to add. Appellant's motion was then denied.

Appellant continued to insist that he could not go forward with trial because he was not ready and he did not think his counsel could represent him in the way he desired. Appellant offered no further reasons for this belief. Throughout, counsel repeatedly suggested alternative solutions to appellant's concerns. Appellant ultimately decided that he wished the trial to proceed without him. Counsel explained at length to appellant how such a decision could hurt appellant and strongly urged appellant to stay in attendance and confer with counsel. Counsel stated that he would call appellant's witnesses at the recess and subpoena them if necessary.

Appellant then made an oral request for a change of judge. Appellant's counsel argued to the court that appellant was in fact entitled to make such a request and, after conferring with the trial court, counsel informed appellant that if appellant put the request in writing, the trial court would grant the motion. Appellant decided to withdraw his request, however, and determined once again that the trial should continue without his presence.

From this record, it is clear that appellant failed to show a substantiated, justifiable dissatisfaction with counsel warranting a continuance and the appointment of new counsel. The trial court afforded appellant every opportunity to demonstrate a basis for the alleged irreconcilable conflict. The trial court specifically inquired as to the basis for appellant's motion to discharge his counsel and, in the extended exchange which followed, observed counsel's repeated efforts to assist appellant in having his concerns met. Under the circumstances, it was apparent to the trial court, as it is to this Court on appeal, that there was not a "total breakdown of communication" between attorney and client and no irreconcilable conflict between appellant and his counsel. Any failure in communication was attributable to appellant's own conduct. The trial court committed no abuse of discretion.

## IV.

 Appellant contends that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to sustain a conviction.

In assessing the sufficiency of the evidence, this Court must accept as true all the evidence and the inferences therefrom that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Story*, 646 S.W.2d at 72. A reviewing court's function is not to substitute its judgment for that of the jury, but to determine whether the evidence, considered in the light most favorable to the state, is sufficient to support the verdict. *Id.*

Appellant was convicted of two counts of robbery, four counts of armed criminal action and two counts of kidnapping. One commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof is armed with a

deadly weapon. § 569.020, RSMo 1986. Armed criminal action is the commission of any felony under the laws of this state "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015, RSMo 1986. The crime of kidnapping occurs when one unlawfully removes another person without consent from the place where that person is found and unlawfully confines that person without consent for a substantial period for the purpose of facilitating the commission of any felony or flight thereafter. § 565.110.1(4), RSMo 1986.

The evidence established that appellant, armed with a handgun, entered the rear seat of the Sudhoffs' car in the Venture store parking lot. Appellant held the gun to Mr. Sudhoff's head and demanded the couple's jewelry and money. Keeping the gun at Mr. Sudhoff's head, appellant ordered Mr. Sudhoff to drive away from the store's parking lot. Once away from the lot, appellant ordered Mr. Sudhoff to stop, forced the couple from the car, and took more money from Mr. Sudhoff. Appellant then abandoned the Sudhoffs, fleeing in their car. The Sudhoffs subsequently identified appellant as their assailant.

The evidence was sufficient to support the convictions.

## V.

■ Appellant contends the trial court erred in overruling his motion for mistrial when "during deliberations the jury mistakenly received a copy of Emily Sudhoff's diary." Appellant additionally asserts that the diary was "inflammatory, prejudicial, and contained inadmissible evidence, including evidence of uncharged crimes." At trial, however, appellant merely requested a mistrial on the basis of the jury's opportunity to view "it." In his motion for new trial, appellant used the word "diary"; otherwise, his complaint mirrored that which he made at trial.

Declaration of a mistrial is a drastic remedy which is employed only where there

has been grievous error. *State v. Escoe*, 548 S.W.2d 568, 571 (Mo. banc 1977). The law in Missouri has long been established that the determination of whether to declare a mistrial rests largely in the discretion of the trial court. *Id.* The circumstances of this case demonstrate that the trial court did not abuse its discretion.

Mrs. Sudhoff's testimony at trial revealed that she had maintained a writing in which she recounted details of the case and its investigation. During the trial, the prosecutor referred to the writing as a "log." The log was marked as Exhibit 11 and subsequently admitted into evidence without objection. In their briefs on appeal, both parties refer to Exhibit 11 as a "diary." [2]

Although appellant contends that most of the information contained in the exhibit was inadmissible, substantially all of the information contained in the exhibit, with the exception of the observation that Sylvester Hornbuckle had a long criminal record and the reference to the unrelated kidnap/rape/murder case, was admitted into evidence without objection through testimony of Mrs. Sudhoff.

What evidence actually went to the jury in the context of this question is not clear from the record. The transcript contains dialogue between appellant's counsel and the trial court which occurred after some or all of Exhibit 11 was delivered to the jury room. Appellant's counsel reports that the jury requested the "diagram," that the bailiff delivered the "diagram" to the jury, recognized the error, and that the "diagram" was in the possession of the jury for perhaps two minutes. As reported in the transcript of defense counsel's remarks, therefore, only the diagram went to the jury. Presumably, this reference is to the diagram Mrs. Sudhoff drew of the parking lot where the incident took place.

The trial court conceded during dialogue with counsel that, after the jury retired, all had agreed, should the jury request Exhibit 11, "I would not give that to them with the

---

**2.** Exhibit 11 was not filed with the record on appeal; however, appellant makes specific references to Exhibit 11 in his argument and includes a copy of what appears to be the entire exhibit as an appendix to his brief. The state has not objected, and, in fact, has joined issue.

exception of the diagram of the scene of the incident, which was done." In denying appellant's motion for mistrial, the trial court noted "the entire Exhibit 11 was admitted into evidence and it is my belief that they are entitled to see that if I sent it to them. On that ground and the fact that no salient points of the diagram were seen and only one juror viewing the first page, a motion for mistrial is denied."

Rule 81.12(a) states: The record on appeal shall contain all of the record, proceedings, and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." The trial transcript is binding on the reviewing court. *State v. Stewart*, 636 S.W.2d 345, 347 (Mo.App.1982). The transcript's report of the continuous use of the word "diagram" throughout the dialogue between appellant's counsel and the trial court creates confusion with regard to what actually went to the jury. Only by allowing the defendant favorable inferences based upon the trial court's statements can this Court consider this point.

This Court is further hampered by the deficiency of the record provided by appellant because the record contains no information whatsoever regarding the circumstances surrounding the "agreement" to which counsel and the court refer when appellant made his motion for mistrial. There is no record of the content of the agreement, no record of the reason or reasons for an agreement, no record of a belated objection, if any, and no indication that Exhibit 11 was withdrawn from evidence. There is nothing of record, consequently, to assist this Court in its determination of whether the trial court erred. *See*, e.g., *State v. Reasonover*, 714 S.W.2d 706, 713 (Mo.App.1986). This Court is precluded from consideration on review of any facts not set forth in the approved transcript. Rule 81.12.

Moreover, and most significantly, Exhibit 11 in its entirety was admitted into evidence without objection and without limitation and was, therefore, lawful evidence. There was, therefore, no improper communication to the jury. There is no presumption of trial court error; thus, the burden is on appellant to demonstrate in what manner, if any, the trial court abused its discretion. Appellant has failed to meet his burden. Under the circumstances of this case, a mere claim of trial court error by failing to declare a mistrial on the basis of the jury's opportunity to view "it" or the "diary" is insufficient to demonstrate abuse of discretion.

The judgment is affirmed.

All concur.