**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**William Franklin STEPHENS,**
**Defendant-Appellant.**

Nos. 13832, 13961.

Missouri Court of Appeals,
Southern District,
Division Two.

April 1, 1986.

Motion for Rehearing and to
Transfer Denied April 22, 1986.

Application to Transfer Denied
June 17, 1986.

David Robards, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Jennifer H. Fisher, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

By information, the defendant was charged with forcible rape. By separate information, he was charged with burglary by unlawfully entering the home of the victim for the purpose of committing rape. The charge of rape was tried with a jury. The jury found the defendant guilty. He was sentenced to imprisonment for five years. Thereafter, by stipulation, the charge of burglary was submitted for trial by the court upon the basis of the evidence in the rape trial. The court found the defendant guilty. Pursuant to the stipulation, the defendant was sentenced to a second term of five years, to run concurrently. Appeals from the two cases have been consolidated for consideration and disposition. The defendant presents three points common to each appeal.

The facts of the offense are as follows. The 24-year-old victim lived alone in a four-room house in Joplin. During the early morning hours of November 5, 1983, the victim returned to her home in Joplin after being out for the evening. As she entered her home through the side door, she was grabbed from behind. The assailant placed one hand over her mouth and the other arm around her waist. As the assailant pushed the door closed, the victim started to scream and turned to see who it was.

The victim said no lights were on in her house. However, she related her house was the second house from an intersection at which there was a street light burning. There were mercury vapor lamps at businesses to the rear of her home. Also, there was an outside light on the side of the neighboring house adjacent to her house. This light was always lighted. On the evening in question, she didn't recall it being on, but "I think if it would have been off, I would have noticed. It's on every night that I drive in." Her automobile which was parked close to her kitchen, had a feature that kept the dome light on a short time after she left the car. The dome light illuminated the kitchen.

When she turned, the victim said she was able to see her assailant's face and part of his shoulders. When the victim screamed, the assailant hit her across the face. The assailant then pushed her into the bedroom and proceeded to disrobe and rape her. As soon as this occurred, the victim became ill and began to vomit. At this, the assailant pushed the victim into the bathroom. She locked the door from the inside. She could hear him rummaging around the house. When she heard the screen door slam shut, she came out of the bathroom and called her girl friend who lived down the street, who in turn called the police. The policeman who answered the call testified that the victim was crying and very upset when he arrived. Although hysterical, she described the intruder to the officer as a white male, approximately early twenties. She did not think he had a beard nor any tattoos, scars or deformities.

Later that day, the victim was questioned by a detective at the Joplin police station. She again described her assailant as being a white male, early to mid twenties. This time she added that his shoulders were broad and that he was taller than she was; he was of medium build and in good physical condition; he had dark hair parted in the middle, collar length, and no moustache or beard. When asked about any distinguishing features, she said, "I noticed the eyes the most", they appeared

to be large. She thought she could recognize her assailant.

Before the assault, the victim had received a series of obscene phone calls. In January, following the rape on November 5, 1983, she received another such call. A "trap" was placed on her phone. By the trap, a subsequent obscene phone call was traced to the telephone at the home of the defendant.

Two officers called on the defendant at his home. They told him a trace established a call to the victim's address in Joplin had been made from the phone in his home at approximately 6:30 p.m. on January 22, 1984. He turned red. He and his wife said they were not home, they were helping another party move. Later, the wife called one of the officers and said they were mistaken, they had been home. But, she denied the defendant made the call.

A few days after the trap, the victim viewed a photographic lineup of five pictures. She quickly set aside three of those pictures. After considering the two remaining, she said a picture of a subject with his eyes closed looked like her assailant, but she needed to see his eyes. The photographs were removed. A short time later the officer returned to the room and again presented the victim with five pictures. With one exception, they were the same photographs. The victim again discarded the same three photographs. After considering the remaining two, she indicated the new photograph and said, "That's the man." She was then told she had identified two pictures of the same person.

The defendant was arrested. Within three weeks after the photographic line-up, the victim viewed a physical line-up of six men. Each of the six men spoke three of the four phrases spoken by the assailant during the rape. She identified the defendant at that time.

Pubic hair samples were obtained from the defendant. These were compared by an expert with three pubic hair samples obtained from the bedspread where the rape occurred. The samples from the bedspread were consistent with the samples obtained from the defendant. They were not consistent with samples from the victim.

The defendant's multi-faceted first point is that the trial court erred

in permitting the victim to make an in-court identification of the defendant as the rapist because under the totality of circumstances such identification could not flow from an independant [sic] source as the victim had virtually no opportunity to view the rapist and because such identification in fact flowed from suggestive line-up procedures likely to produce mis-identification in that the victim was told two photos of the defendant depicted the same person and thereafter made the identification on which she based her testimony, so that the in-court identification of the defendant was not reliable and the admission of it into evidence denied the defendant his right to the due process of law.

The broadly stated point has merit, of course, only if based upon facts which caused the victim's in-court identification to be inadmissible. In presenting facts, in an effort to establish the point, the defendant seizes upon isolated bits of testimony to the exclusion of other evidence on the subject. For example, to establish it was impossible for her to see her assailant, the defendant emphasizes the victim's testimony that her kitchen was illuminated only by the dome light of her car. He does not mention the presence of the nearby street light, the lights to the rear of the house or the neighbor's side light. He ignores her testimony that she was able to see her assailant's face. He fails to mention her explanation that the dome light was the closest to her house and "that's where I thought the light was coming from." As a further example, he argues the physical line-up was suggestive because the victim was expecting to identify a man wearing a moustache. He does not mention that three of the young men in the physical line-up were wearing moustaches.

■ The defendant also places great reliance upon the fact the victim described her assailant as clean shaven, when in fact he had a moustache. He also insisted the moustache never changed in appearance. He fails to take into account defendant's wife's testimony that he never thinned down his moustache, "just shaved it up off of his lip." In this connection, it should be noted that a discrepancy in a description, such as the presence of a moustache does not bar an in-court identification. *State v. Smith*, 704 S.W.2d 290 (1986); *State v. Trimble*, 654 S.W.2d 245 (Mo.App.1983).

In determining whether to suppress an in-court identification or extrajudicial identification, the court applies a two-step analysis. First, were the police procedures so impermissibly suggestive as to result in very substantial likelihood of an irreparable mis-identification at trial. *State v. Price*, 689 S.W.2d 380 (Mo.App.1985). If the police procedures are found to be impermissibly suggestive, then the question becomes whether there was an independent reliable basis for the in-court identification. *State v. Toney*, 680 S.W.2d 268 (Mo.App. 1984). This is judged by the totality of the circumstances, including the opportunity of the witness to view the criminal at the time of the crime; the witnesses' degree of attention; the accuracy of the witnesses' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *State v. Charles*, 612 S.W.2d 778 (Mo. banc 1981), cert. denied, 454 U.S. 972, 102 S.Ct. 522, 70 L.Ed.2d 392 (1981).

■ Contrary to the defendant's contention, the line-ups were not unduly suggestive because the victim anticipated the presence of her assailant. *State v. Sanders*, 621 S.W.2d 386 (Mo.App.1981); *State v. Lorenze*, 592 S.W.2d 523 (Mo.App.1979). Nor were the line-ups so flawed because the defendant was the only person who appeared in both photographic line-ups and in the physical line-up. *State v. Trimble*, supra. Nor did the fact the victim was told the two photographs she set aside were of the same person result in impermissible suggestiveness. Cf. *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979).

■ The defendant also argues that the victim's in-court identification was barred because of her answer to a question at the suppression hearing. When, later at that hearing, she was asked the basis for her identification at the suppression hearing, she replied, "The line-up." The defendant's argument that the in-court identification was not based upon what she saw during the rape, construes this remark out of context. The fact the victim described her assailant as having no moustache or beard has been noted. When, after the statement noted, the victim was asked if she based her in-court identification on the line-up and not on what she observed in her home she answered, "He's changed." This was followed by the following questions and answers.

A. He's changed.

Q. Pardon me?

A. He has changed. He's grown a moustache. That's different.

Q. He has grown a moustache?

A. Yes.

Q. At the time of the line-up he had a moustache, did he not, ma'am?

A. Very little.

Whether or not the defendant had a thin moustache or no moustache at the time of the offense was for the jury. Whether or not his moustache was heavier at the time of the suppression hearing and trial than at the time of the offense, assuming he then had a moustache, and at the time of the picture first identified by the victim was also for consideration by the jury. It is significant the victim had described her assailant as clean shaven. Nonetheless, she first singled out a picture of the defendant wearing a moustache. She subsequently identified the defendant in a physical line-up in which three of the six subjects were wearing moustaches. The fact the line-ups aided the victim in making an in-court identification of the defendant at the suppression hearing does not cause her

identification at trial to be inadmissible. The answers quoted above establish the victim did observe the assailant at the time of the offense and to note what she perceived to be a change in his appearance. The certainty and ability of the victim to identify the defendant was for the jury. *State v. Little,* 674 S.W.2d 541 (Mo. banc 1984), cert. denied, —— U.S. ——, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985).

■ There was sufficient evidence of reliability of the victim's in-court identification to the jury. This is true even though the kitchen may have been dimly lit and the victim could not see her assailant clearly, but for a short span of time. *State v. Purnell,* 621 S.W.2d 277 (Mo.1981); *State v. Grady,* 649 S.W.2d 240 (Mo.App.1983). The victim's attention was focused solely on her assailant. *State v. Berry,* 609 S.W.2d 948 (Mo. banc 1980). Her prior descriptions remarkably fit the characteristics of the defendant, except perhaps for the presence of or extent of a moustache, *State v. Higgins,* supra; *State v. Smith,* supra. As stated, this presented an issue for the jury, but did not preclude the identification. It is significant the victim picked defendant out of all three line-ups. Only in regard to the victim's identification of the first photograph, where the subject's eyes were partially closed, was her identification less than immediate. *State v. Robinson,* 674 S.W.2d 144 (Mo.App.1984); *State v. Gullett,* 633 S.W.2d 454 (Mo.App.1982). The time which elapsed between the underlying event and the line-ups was not such as to render victim's identification unreliable. *State v. Story,* 646 S.W.2d 68 (Mo. banc 1983); *State v. Haymon,* 639 S.W.2d 843 (Mo.App.1982). Further, in addition to her visual identification of defendant, the victim also made a voice identification at the physical line-up. Even though she had heard only the four statements, this adds to the reliability of her identification. See *Eichelberger v. State,* 524 S.W.2d 890 (Mo. App.1975). .

At trial the victim was asked, "Would you tell the jury please whether or not the face of Williams [sic] Stephens sitting here is the face you saw in your kitchen the early morning hours of November 5th?" She answered, "Yes it is." The trial court did not err in submitting the credibility of that in-court identification to the jury. *State v. Macon,* 547 S.W.2d 507 (Mo.App. 1977).

■ By his second point the defendant contends the trial court erred in admitting testimony that the victim received obscene phone calls and that the last call was traced to defendant's phone number. The basis for his point is that this was inadmissible evidence of a separate and distinct crime and that the probative value was outweighed by its prejudicial effect.

The general rule is that evidence of crimes not charged is inadmissible. *State v. Holbert,* 416 S.W.2d 129 (Mo.1967). However, exceptions apply when the evidence tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and (5) the identity of the person charged with the commission of the crime on trial. *State v. Darnell,* 639 S.W.2d 869 (Mo.App.1982). If evidence is logically relevant to prove a material fact in issue, it is not inadmissible merely because it incidentally proves another crime. Id. In overruling a motion in limine concerning the obscene phone calls, the trial court stated, "Obscene phone calls indicate an unnatural and illegal sexual interest ... which goes in with the events of November the 5th, and it would be sort of a common scheme or plan or a motivation for those events."

Further, the evidence referred to was admissible because it tended to show the identity of the victim's assailant. The calls established the caller knew the living habits of the victim. For example, the victim was sunbathing in her backyard wearing a blue bathing suit. Within a week or two she received a call making reference to her "blue bikini." This familiarity is significant because only a short time before the rape, the victim resumed entering her home

through the side door. The assailant knew it was her customary entry for it was at the side door that he grabbed her. Further, the caller used the same expression to tell the victim of his desire for deviate sexual intercourse as such the expression used by the assailant. Even though the victim could not say the voice of the caller was that of the defendant, the last call was traced to the phone in his home. It was for the jury to decide whether there was sufficient connection between the evidence presented relating to the phone calls and the occurrence of the rape to find that the defendant was the perpetrator. This evidence complained of tends to establish the guilt of the defendant. Any evidence against the defendant is prejudicial. However, this court finds the necessity for and probative value of evidence concerning the obscene phone calls outweighs the prejudicial effect within the requirement of *State v. Collins,* 669 S.W.2d 933 (Mo. banc 1984). Defendant's second point is denied.

His final point is that the trial court erred in admitting a photograph on the ground that it was misleading. The photograph taken at night, showed the neighbor's outdoor light when it was on. The defendant contends this was erroneous because there was a dispute as to whether or not the light was on at the time of the rape. He also claims this is in conflict with admissions made by the victim.

The admissibility of a photograph rests within the discretion of the trial court. *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984).

> The test is whether photographic evidence shows relevant facts which will aid the jury. Photographs taken of a crime scene which reveal different conditions from those existing at the time the crime occurred are admissible and any objections to such photographs go to the weight of the evidence; any differences in conditions may be developed in the evidence.

*State v. Johnson,* 508 S.W.2d 18, 20 (Mo. App.1974).

The evidence concerning the neighbor's outside light has been stated. The victim did not specifically recall whether the neighbor's light was on but the photograph depicts conditions and circumstances at the crime scene. Any difference in the area between the photograph and at the time of the offense was thoroughly developed by the evidence. The trial court did not abuse its discretion in admitting the photograph. *State v. Lee,* 549 S.W.2d 934 (Mo.App. 1977). The defendant's third point is denied and the judgment is affirmed.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.