**STATE of Missouri, Plaintiff-Respondent,**

v.

**Russell HADLEY, Defendant-Appellant.**

No. 14817.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 27, 1987.

Motion for Rehearing or to Transfer Denied Sept. 16, 1987.

Application to Transfer Denied Oct. 13, 1987.

Nancy A. McKerrow, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Russell Hadley guilty of sodomy, (§ 566.060),[1] robbery in the first degree, (§ 569.020), and armed criminal action, (§ 571.015), and he was sentenced, as a prior offender, to a term of 30 years for each offense, the sentences to run consecutively. Defendant appeals.

Defendant's first point is that the trial court erred in overruling his motion for judgment of acquittal because the evidence is insufficient to support the verdict in that: (a) there was no substantial evidence that defendant was the perpetrator of the offenses due to "numerous inconsistencies" in the identification testimony of the victim and (b) with respect to the sodomy charge, the state failed to prove that deviate sexual intercourse occurred "because there was no evidence of contact between the genitals of defendant and the mouth, tongue, hand or anus of Hazel Smith, the victim."

In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). All evidence unfavorable to the state must be disregarded. *State v. Summers*, 506 S.W.2d 67, 69[1] (Mo.App. 1974).

■ During the early morning hours of December 11, 1985, Hazel Smith, an 82-year-old widow, was alone and in bed asleep in her mobile home in Webb City. She felt someone stroking the side of her face. She heard the intruder say, "I've waited so long for this." She saw a man with a bread knife in his right hand "raised up above." The man was naked and lying "not completely on the bed." Mrs. Smith, a state's witness, testified that the man pulled off her pajama bottoms, ripped off her pajama top and made her stand up. "We stood there a few seconds and he set me down on the bed and reached over and got the top of my pajamas. ... Then he

took the bigger part of the pajama top and put it over my head ... blindfolded me."

There was light in the room. Mrs. Smith testified that she recognized "the man that she saw in her trailer there that night up until the time he put the blindfold on me." She pointed to the defendant and identified him as the intruder. Mrs. Smith further testified that the defendant subjected her to a variety of sexual acts. The acts of sodomy will be described later.

Mrs. Smith also testified that the defendant took some money and several articles of her personal property which were in the trailer. Before leaving, defendant told Mrs. Smith, "It won't do the police any good if you call them because I'll get in my car and I'll leave and they won't even know where I went." Mrs. Smith testified that she "went to listen to see if I heard a car start because that was about 3:20 in the morning and I didn't hear anything." Among the articles stolen by the defendant was a key ring which included the key to the front door of the trailer. On December 12 Mrs. Smith had a chain lock installed on her front door in addition to the "button lock."

Mrs. Smith testified, without objection, that on the night of December 15, 1985, four days after the original intrusion, "somebody tried to get in my trailer again. It was in the night and I was asleep. I heard pounding on the front door and it woke me up. I managed to get to the phone. The door would open about this much with the chain on. I could see his head. He was down working on the chain making a lot of noise. I didn't get a good enough look at his face at that time to see his face." She said that both the chain lock and the button lock were locked by her before the attempted entry on December 15.

On cross-examination by defense counsel Mrs. Smith said that on the night of the original intrusion, "My front door was locked and they can unlock them with a card, you know that and he does too."

**1.** All references to statutes are to RSMo 1986, V.A.M.S. and, except where otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

Defense counsel attempted to impeach Mrs. Smith's identification of the defendant. She testified that she saw the outline of his face, his naked shoulder, his dark hair, and the side of his head. "I even saw the hair where it was cut.... I saw his eyes when he was standing up there just before he started to put the mask on me ... real shortly after I saw him and got this glimpse of his face he put this blindfold over my eyes."

She also testified that prior to the original intrusion defendant "came over and did my grass for me once. The people next door had him cut their grass and I was on the porch and he walked over from their place and asked me if I wanted my grass cut. I told him the boy next door cuts my grass but he doesn't do a bang-up job. I asked him how much he would charge to straighten it up and he said '$5.00' and I said 'okay.' He did it and came and I paid him."

She also testified that later in the day of December 11 the police showed her a group of photographs. In the last part of January 1986 she was shown a second group of photographs. She identified defendant as one of the men shown in the second group. "One thing I was looking for was how long the hair was. I naturally didn't point at the people with the long hair because I knew he had a close hair cut."

Chief Deputy Sheriff Larry Parrill testified that on December 11, 1985, he investigated the bedroom in Mrs. Smith's trailer and collected from the bed sheet what appeared to be pubic hair. He also collected pubic hair samples and saliva samples from defendant when the latter was placed in custody on January 27, 1986. He turned these items in to the crime laboratory. On cross-examination by defense counsel Parrill testified that on December 15 he went to Mrs. Smith's trailer after the second entry had been attempted. He looked at some footprints in the snow which led to the road.

Melvin Mosher, associate director of the crime laboratory, testified that defendant had type A blood and that semen stains on Hazel Smith's night shirt were deposited by a person who had type A blood. He said that 42 percent of the population have type A blood.

Phillip Whittle, director of the crime laboratory, testified that he had compared pubic hair samples from the sheet with pubic hair obtained from defendant. One of the hairs from the sheet "did not come from the victim." He compared that hair with defendant's hair and "the sum of these properties appear to be consistent or compatible with the control samples from defendant."

Webb City police officer Randy Breeden testified that he went to Hazel Smith's trailer at 5:43 a.m. on December 15, 1985. There had been a light snow and Breeden observed tracks of snow across Hazel Smith's trailer porch. Her front door "had noticeable damage. It was bowed and bent, kind of sprung out of shape." He followed the tracks in the snow. "As they left the porch, they kind of veered in a southeast direction away from the porch." The witness drew a diagram showing the location of Mrs. Smith's trailer and the trailer of defendant's mother which was located in the same general area.

Although the distance between the two trailers was not estimated by any witness, photographs taken from the inside of Mrs. Smith's trailer show the other trailer. From these photographs the jury could find that the trailer of defendant's mother was generally southeast of the Smith trailer and that the trailers were perhaps 300 feet apart.

Breeden testified that the tracks in the snow "left the Smith trailer, they went southeast.... The snow was gone on the driving lanes and the pavement but in the grass-covered yards and also in the grassy center median of the road there was snow."

On a diagram, Exhibit 35, Breeden marked four areas where he observed snow tracks. The first area was across the Smith porch and yard, the second area was across the median, the third was across an area farther southeast, and the fourth area was across the yard of the other trailer leading to its porch. "The size and shape of the prints coming off Mrs. Smith's trail-

er were very similar in size and general shape of the ones I saw in front of the Hadley trailer." The four sets of tracks were generally along the same interrupted line. Exhibit 35 was admitted without objection.

The defense was alibi. Gail Randolph testified that she was at a party with defendant at a nearby apartment complex and drove him to his mother's trailer between 12:30 and 1:00 a.m. Defendant's mother testified that defendant "arrived home about 1:15 or 1:20 a.m." and "we stayed up late." The witness stayed up until 4:00 a.m. and she sat up with defendant "until he went to sleep."

Testifying in his own behalf, defendant said, on direct examination, that he had "criminal convictions for burglary, stealing and grand larceny in Oklahoma ... also for public drunk and property destruction." He testified that he attended the party until Gail Randolph took him home at 1:00 a.m. "I spent the remainder of the night and the early morning hours at [his mother's] trailer." He denied going to Hazel Smith's trailer on December 11 or December 15. On cross-examination defendant admitted that on February 13, 1985, in Kansas City, he committed burglary and stealing.

"The issue of identification of the perpetrator of a crime is for the jury, and appellate courts do not delve into a determination of the weight of the evidence in such cases." *State v. Timmons*, 584 S.W.2d 129, 132[1] (Mo.App.1979). To similar effect see *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo.App.1975), and *State v. Maxwell*, 502 S.W.2d 382, 390[9] (Mo.App.1974).

In *State v. Sigh*, 470 S.W.2d 503 (Mo. banc 1971), the court said, at p. 505: "In Missouri, a judicial or extra-judicial identification by a person testifying at trial is admissible. ... The weight of such testimony is for the jury.... We are not alone in taking this position. In *Stovall* [*v. Denno*] (388 U.S. 293, 299–300, 87 S.Ct. 1967, 1971 [18 L.Ed.2d 1199]), the Court noted that the 'overwhelming majority of American courts have always treated * * * [this] evidence question not as one of admissibility but as one of credibility for the jury.'"

■ There was substantial evidence that defendant was the perpetrator of the offenses and the claimed inconsistencies in the identification testimony of the victim were matters for resolution by the jury and not by this court. Ground (a) of defendant's first point has no merit.

■ In his argument under ground (b) of his first point, defendant states that the state failed to prove that an act of "deviate sexual intercourse" occurred because "defendant's genitals did not touch [Hazel Smith's] mouth or tongue."

"A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent, with the use of forcible compulsion." § 566.060.1. "'Deviate sexual intercourse' means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010.1(2).

The evidence shows that defendant masturbated directly in front of his victim and, immediately prior to ejaculation, ordered her to stick out her tongue. He then ejaculated on her tongue. Such conduct constituted a sexual act involving the genitals of defendant and the tongue of the victim and thus it was "deviate sexual intercourse." The evidence also showed that defendant was not married to the victim and that the deviate intercourse took place without her consent by the use of forcible compulsion. Ground (b) of defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in overruling his motion to dismiss Count I, the sodomy count, in that "no complaint charging sodomy had ever been filed with the associate circuit court, [and] no preliminary hearing had ever been held on the charge of sodomy, no information may be filed absent a preliminary hearing or waiver thereof, and the circuit court acquires no jurisdiction absent the filing of a valid information."

Defendant's second point focuses upon a variance between Count I of the complaint

and Count I of the information. Each of those documents contained three counts and each count referred to the events of December 11, 1985, involving Hazel Smith. The respective structures of the documents are:

COMPLAINT
Count I—Rape (§ 566.030)
Count II—Robbery in the first degree (§ 569.020)
Count III—Armed criminal action (§ 571.015)

INFORMATION
Count I—Sodomy (§ 566.060)
Count II—Robbery in the first degree (§ 569.020)
Count III—Armed criminal action (§ 571.015)

---

The information also contained prior and persistent offender allegations.

Events took place in the following sequence in 1986:

February 4—Defendant was arraigned and counsel was appointed for him.

March 5—Preliminary hearing held.[2] Defendant was present with trial counsel.

March 7—Information filed.

March 10—Defendant, represented by trial counsel, was furnished a copy of the information, waived a reading thereof, and entered a plea of not guilty.

April 14—Defendant's motion for bill of particulars was sustained.

Evidentiary hearing held with respect to defendant's "Motion to Suppress Identification." At this hearing defense counsel produced Hazel Smith as a witness and examined her at length concerning the events of December 11, 1985, at her trailer.

April 16—State filed bill of particulars.

April 29—Defendant filed six motions.

April 30—Defendant filed a motion.

May 1—Defendant filed a motion.

May 2—(Morning of trial) Defendant filed a motion to dismiss Count I of the information on the ground that "no complaint charging sodomy, the subject of Count I, has ever been filed in this case." The motion made no request for a preliminary hearing on the sodomy charge.

During the hearing on the May 2 motion, defense counsel made no request for a preliminary hearing on Count I of the information. During that hearing the prosecutor informed the court that at the preliminary hearing attended by Mr. Johnston, one of defendant's trial counsel, the sodomy evidence, described under ground (b) of defendant's first point, was introduced. Mr. Johnston did not refute that remark. At the conclusion of the argument, the following occurred:

"THE COURT: Well, I feel like defense counsel have kind of sandbagged the Court here. You come here at nine a.m. on the day of trial and hand me this motion to dismiss Count I and bring up something that I wasn't aware of before. I think that there is probably good reason to feel that they have waived this objection. After all, preliminary hearing is something that can be waived. So I'll overrule the motion and let's go ahead to trial."

Rule 24.04(b) reads, in pertinent part:

"(b) Motion Raising Defenses and Objections.

1. *Defenses and Objections Which May Be Raised.* Any defense or objection which is capable of determination without trial of the general issue may be raised before trial by motion.

2. *Defenses and Objections Which Must Be Raised.* Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to

**2.** Although the record does not specifically indicate that Hazel Smith testified at the preliminary hearing, she did testify, at the jury trial, that she had seen defendant in the courthouse. She testified, "After those times the police showed me the pictures of Hadley. I next saw him in person at one of the trials." The inference is clear that Hazel Smith testified at the preliminary hearing and defendant's brief makes no contention otherwise.

show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection *as herein provided* constitutes a waiver thereof, *but the court for cause shown may grant relief from the waiver.* Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

3. *Time of Making Motion. The motion shall be made before the plea is entered,* but the court may permit it to be made within a reasonable time thereafter." (Emphasis added.)

Subsections 1, 2 and 3 of Rule 24.04(b), are identical to the pre–1975 version of Rule 12 of the Federal Rules of Criminal Procedure, except that the latter rule inserted the article "the" before the word "trial" in Subsection 1. With regard to the federal rule, a leading commentator has said:

"Prior to 1975 Rule 12(b)(2) had provided that certain defenses 'may be raised only by motion before trial' and that 'failure to present any such defense or objection as herein provided constitutes a waiver.' That could have been read as meaning that those defenses were not waived so long as they were raised 'before trial.' On close analysis, however, it appears that the waiver came from a failure to raise the defense *'as herein provided'* and that the method provided therein was 'by motion before trial.' This made what was then Rule 12(b)(3) operative and it required the motion before trial to be made *before plea* or 'within a reasonable time thereafter.' Thus the cases under the pre–1975 rule held that a defense in this second class was waived because not raised until an unreasonable time after the plea, though before trial.... These cases seem correct under the rules as they then were, and the result was a desirable one with defenses that are essentially of a dilatory nature. The amended rules make the

point clear beyond dispute." Wright, Fed.Pract. & Proc., Vol. I, § 193, pp. 697–698, fn. 22. (Citing authorities.) (Emphasis added.)

This court, adopting the foregoing rationale, holds that the term "as herein provided," contained in Rule 24.04(b)2, refers to Rule 24.04(b)3. The "defense and objection" raised by defendant's May 2 motion was not based on the ground that the *information* failed to show jurisdiction in the court or to charge an offense. See Rule 24.04(b)2. The *information* did not fail to show jurisdiction in the court and defendant makes no claim that Count I of the information failed to charge an offense. Thus the ground stated in the May 2 motion was of the type described in Rule 24.04(b)2 as "defenses and objections based on defects in the institution of the prosecution or in the ... information, other than that it failed to show jurisdiction in the court or to charge an offense." A motion raising that type of objection "shall be made before the plea is entered," Rule 24.04(b)3, and "failure to present such defense ... as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." Rule 24.04(b)2.

The May 2 motion was not made before the plea was entered. There was, therefore, a waiver of the objection. No cause was shown for granting relief from that waiver and the trial court did not grant such relief. For the reasons which follow, this court upholds the trial court's denial of the May 2 motion and agrees with the trial court that the dilatory motion was one of the sandbagging variety.

Defendant argues that the trial court did not acquire jurisdiction of the sodomy charge because the complaint did not charge defendant with sodomy. Defendant also argues that no preliminary examination was held on the sodomy charge.

It must be remembered that the disputed ruling of the trial court dealt with a motion to *dismiss.* That motion did not seek a preliminary examination. Also to be kept in mind is the fact that the case proceeded

to trial on the *original information* which pleaded sodomy. This is not a situation where the information was amended so as to charge an additional or different offense from that charged in the original information, in which event Rule 23.08 would have been violated. The only possible prejudice which defendant attempts to point out is the absence of a preliminary examination but, again, the belated motion did not request a remand for that purpose. See *State v. Carter*, 718 S.W.2d 643, 646[6] (Mo.App.1986).

Long ago it was held that when a defendant is arraigned and enters a plea of not guilty, he waives "not only defects in the preliminary hearing, but even the failure to hold one at all." *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314, 319[4,5] (1945). The court also said: "Some of the cases say such waiver occurs when the defendant pleads the general issue *and* goes to trial ... Going to trial does, perhaps, make the waiver stronger, but it is not essential." (Emphasis in original.) Id. Similarly in *State v. Neal*, 350 Mo. 1002, 169 S.W.2d 686 (1943), the court said, at p. 692:

"[W]here the defendant has waived a preliminary hearing, he cannot complain of defects in the complaint. In this case the record shows appellant Neal and defendant Hines (before the severance) both waived formal arraignment and entered pleas of not guilty in the circuit court. This waived the preliminary hearing and therefore the alleged defects in the complaint."

A defendant, by proceeding to trial without objecting to defects in a preliminary examination or to the lack of a preliminary examination, waives such objections, *State ex rel. Woods v. Connett*, 525 S.W.2d 326, 332[9] (Mo. banc 1975); *State v. Lafferty*, 416 S.W.2d 157, 160–161[3] (Mo.1967); *State v. Ashe*, 403 S.W.2d 589, 591[3] (Mo. 1966); *Davis v. State*, 651 S.W.2d 497 (Mo. App.1982). "[I]rregularities or imperfections in the magistrate court proceedings in felony cases are waived if the defendant pleads in the circuit court without, in some manner, raising his objections to the preliminary proceedings." *McGlathery v. State*, 465 S.W.2d 496, 498 (Mo.1971).

■ The sole purpose of a preliminary examination is to determine whether a felony has been committed and whether there is probable cause to believe that it was committed by the accused. *State v. Woods*, 723 S.W.2d 488, 505[11] (Mo.App. 1986). It is not the purpose of a preliminary examination "to provide the accused a forum for discovery. There are rules designed for that. Rule 25.01 et. seq." Id.

The filing of a complaint in the associate division of the circuit court "does not constitute a criminal prosecution, but is the first step in instituting a criminal charge.... The complaint performs the same office that an indictment or information does in the circuit court. The purposes of a complaint or affidavit are to advise accused of the charge made against him and to enable the committing magistrate to determine whether or not accused should be bound over to stand trial for the offense." *State v. Rhodes*, 591 S.W.2d 174, 175[1,2] (Mo.App.1979).

Rule 22.07(c), dealing with preliminary examination, reads, in pertinent part:

"If from the evidence it appears to the judge that there is probable cause to believe that *a felony* has been committed and that the defendant has committed it, the judge shall order him to appear in the court having jurisdiction of the offense; otherwise the judge shall discharge him." (Emphasis added.)

The language, "a felony," is significant. As pointed out in *State ex rel. Thomas v. Crouch*, 603 S.W.2d 532, 536–537 (Mo. banc 1980), the supreme court modified, after its adoption but before it became effective, a prior version of the rule which used the language "the felony complained of" instead of the language "a felony," which the rule now contains. The distinction between the two wordings is both meaningful and obvious.

■ The jurisdiction of the circuit court to try a defendant on a felony charge does not derive from the adjudication of the associate circuit judge in a preliminary examination. That jurisdiction "comes origi-

nally from the formal accusation by indictment or information." *State v. Clark,* 546 S.W.2d 455, 462[4] (Mo.App.1977). (Citing authorities.) To the same effect see *State v. Ferguson,* 278 Mo. 119, 212 S.W. 339, 341 (banc 1919), and *Nero v. State,* 579 S.W.2d 638, 639–640 (Mo.App.1979).

Defendant relies primarily on *State v. Nichols,* 330 Mo. 114, 49 S.W.2d 14 (1932), and *State ex rel. Buresh v. Adams,* 468 S.W.2d 18 (Mo. banc 1971). Each is distinguishable. In *Nichols* no complaint at all was filed before the justice of the peace as a basis for the preliminary examination. The record showed that defendant did not waive a preliminary examination. Relying on statutes prohibiting the filing of an information charging a felony until the defendant shall first have been accorded the right of a preliminary examination, the court held the proceedings were fatally defective. *Nichols* was decided prior to the adoption of Rule 24.04(b), supra, and was based on certain statutes then in effect. In the case at bar, a complaint was filed, there was a waiver under Rule 24.04(b), and that rule supersedes all statutes inconsistent with it. See Rule 19.02.

In *Buresh,* a prohibition proceeding, relator, defendant in the underlying criminal case, was not accorded a preliminary examination on the charge contained in the pending information and that preliminary examination had not been waived by relator. The supreme court, in making absolute its provisional rule in prohibition, said, at p. 22:

"Relator's Motion to Abate requested 'that prosecution on the information herein be ordered abated and *that the cause be returned to the Magistrate Court of Audrian County, Missouri, for preliminary hearing on the offense purportedly charged.'* (Emphasis ours.) It was this motion that the court overruled, after which this prohibition proceeding was commenced here."

Unlike the situation in *Buresh,* in the case at bar a preliminary examination was held, although the complaint did not charge sodomy. A preliminary examination on that charge, however, was waived by defendant and defendant's May 2 motion did not seek a remand for a preliminary examination but instead sought dismissal. There was no basis for dismissal because the circuit court had jurisdiction to try the sodomy charge. It may be noted, also, that an additional preliminary examination, had one been requested and accorded, would not have provided defendant with any information he did not already have. Defendant's second point has no merit.

Defendant's third point is that the trial court erred in admitting into evidence, over defendant's objection, "the testimony of Randy Breeden concerning the subsequent attempted breakin of Hazel Smith's trailer on December 15, 1985," because "there was no substantial evidence to show that it was defendant who attempted the [December 15 break-in] and the evidence required the jury to speculate as to defendant's participation in that crime."

▮ The first witness to testify concerning the December 15 break-in was Hazel Smith. Her testimony concerning the incident, previously set forth, was received without objection. Although defendant earlier, by a motion in limine, had unsuccessfully sought exclusion of evidence pertaining to the December 15 break-in, the pretrial ruling on the motion in limine was "interlocutory in nature only," *State v. Woods,* 639 S.W.2d 818, 820 (Mo.1982), and in the absence of a renewal of the objection when the evidence in question was offered, the point has not been preserved for appellate review. *State v. Moss,* 627 S.W.2d 667, 668[1] (Mo.App.1982). Breeden's testimony concerning the break-in itself, as distinguished from his testimony concerning the tracks in the snow, all of which has been set forth earlier, was merely cumulative of that of Hazel Smith and no plain error, within the meaning of Rule 30.20, appears.

▮ Even if defendant's third point is viewed charitably as an attack upon Breeden's testimony with respect to tracks in the snow, which he observed on December 15, evidence concerning that topic was first introduced into the trial by defense counsel during cross-examination of state's witness Larry Parrill. Parrill testified that on De-

cember 15 he went to Mrs. Smith's trailer "and I looked at some footprints in the snow. Those footprints led to the road and then they vanished." Since it was defense counsel who initially injected the subject, this court finds no error in the subsequent admission of Breeden's testimony concerning the tracks in the snow. *State v. Zeitvogel,* 655 S.W.2d 678, 687[10] (Mo.App.1983). Under these circumstances it is not necessary to consider whether that testimony was otherwise admissible, as the state argues, under the "common scheme or plan" or "identity" exceptions to the general rule excluding evidence of other crimes.

Defendant's fourth point is that the trial court erred in overruling his pre-trial motion to suppress the in-court identification testimony of Hazel Smith because that testimony "was based upon two pre-trial photographic lineups which were unnecessarily suggestive due to the fact that a more reliable lineup could have been conducted but was not, defendant's photograph was the only photograph to appear in both photographic arrays, defendant's photograph was the only one to show two full face views instead of one side view and one full face view, Smith had no opportunity to view the person who attacked her, and Smith based her identification of defendant on his hair style."

Defendant's pre-trial motion to suppress stated, in part, "Defendant was arrested for the offense because of an extrajudicial identification by Mrs. Smith from being shown five photographs.... The photographic identification was so unduly suggestive and conducive to irreparable misidentification as to deny defendant due process of law.... Any in-court identification was tainted by said out-of-court identification."

It will be observed that none of the specific grounds set forth in defendant's fourth point was set forth in his motion to suppress. When Mrs. Smith, at the jury trial, identified the defendant as her assailant, defendant stated: "I want to object to her identification testimony on the grounds of our pre-trial motion to suppress. I want to reassert each and every ground asserted

in that motion and ask that the court suppress that identification and not allow her to testify on that." The court overruled that objection.

■ A motion to suppress which merely states conclusions and not facts presents nothing for the trial court to consider and preserves nothing for appellate review. *State v. Upshaw,* 619 S.W.2d 925, 927 (Mo. App.1981). See also Rule 24.04(b)2.

■ Although defendant's fourth point appears to limit itself to an attack on the trial court's ruling on his pre-trial motion to suppress, the argument portion of defendant's brief indicates that what defendant is really complaining about is the trial court's action in admitting into evidence Hazel Smith's in-court identification of defendant. Defendant argues the identification should not have been admitted because Mrs. Smith "had no independent basis for making the identification of defendant and her identification was the product of an unnecessarily suggestive pre-trial identification procedure."

In *State v. Little,* 674 S.W.2d 541, 542 (Mo. banc 1984), referring to the testimony of a rape victim, the court said:

"Although she had only a brief glimpse of the right side of his face, she was positive in her identification, and her testimony, absent a showing of improper suggestion, may be weighed by the jury." The court also said, at p. 544:

"The question of taint by suggestiveness is a preliminary question of fact addressed to the court. The defendant has the burden of adducing facts which indicate some sort of taint, in order to present the question of suggestiveness for decision."

On two separate occasions Mrs. Smith was shown a set of five photographs. A photograph of defendant was in each set, but the two photographs of defendant were taken at different times and he had changed his hair style between the takings. Webb City police officer Roger Spencer was present at both showings. The first showing took place at approximately 3:00 p.m. on December 11, 1985, the day of the

crimes. The second showing took place on January 31, 1986, a few days after defendant had been taken into custody.

Defendant's motion to suppress mentioned "five photographs," but did not identify which of the two sets of photographs was allegedly tainted. In his brief defendant points out that in the set of photographs shown on January 31, 1986, the photograph of defendant shows two full face views and the other four photographs, of other young men, contain both full face and profile views. All ten photographs were of the same general size and were of the "mug shot" type. All were black and white photographs and all had two views of the person shown. All of the persons shown were white males in the general age group of defendant, who is white. There is no claim that the officers who participated in the two photographic showings made any suggestive remarks to Mrs. Smith.

 This court's review of the record, including the transcript of the hearing on defendant's motion to suppress, shows there was no "taint by suggestiveness." There is no merit in defendant's complaint that the photographic displays were suggestive merely because "a more reliable lineup could have been conducted." The failure to hold an actual lineup does not make a photographic display suggestive. *State v. Jones,* 642 S.W.2d 387, 388 (Mo. App.1982); *State v. Letourneau,* 515 S.W.2d 838, 842[3] (Mo.App.1974).

 The two photographic displays were not flawed merely because defendant was the only man who appeared in both. *State v. Stephens,* 708 S.W.2d 345, 348[2] (Mo.App.1986). See also *State v. Trimble,* 654 S.W.2d 245 (Mo.App.1983). In the second set of photographs defendant's photograph was the only one to show two full face views instead of one side view and one full face view. That was a factor "less than ideal," but it was not, as a matter of law, "so suggestive as to violate due process." *United States v. Sherry,* 318 A.2d 903, 904–05[2] (D.C.App.1974). That case involves similar facts.

Defendant misstates the evidence previously summarized when he states that Mrs. Smith "had no opportunity to view the person who attacked her." Although defendant's hair style was a factor in Mrs. Smith's identification, it was not the only one. Indeed, a change in defendant's hair style from that shown in the first set of photographs was a reason for the second set being shown some weeks later.

Apart from the photographs, Mrs. Smith had a substantial independent basis of identification at trial and her testimony was positive and unequivocal. Through the lawn mowing incident she had had a prior acquaintance with the defendant. This court holds that the pre-trial identification procedures were not tainted by suggestiveness and that Mrs. Smith had an independent source of identification upon which to base her in-court identification of defendant. Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in denying two separate defense motions for mistrial based on prosecutorial misconduct. The first motion was prompted by a question of the prosecutor during his cross-examination of the defendant. The prosecutor elicited from the defendant the fact that he had been convicted in Hawaii "of theft" and served some time "in jail." The following then occurred:

"Q. Russell, back in 1980 you were also convicted in Jasper County of burglary, weren't you?

A. 1980?

Q. Yeah. Didn't you serve six months ... didn't you get a six months sentence and two years on probation back in January of 1980?

A. That was for property destruction.

Q. *It was originally burglary, reduced to property destruction, is that right?*

A. Attempted burglary, yes.

Q. And then you pled guilty to property destruction?

A. Yes, I did.

DEFENSE COUNSEL: Let's approach the bench, Your Honor."

Outside the hearing of the jury defense counsel objected to the prosecutor's "bring-

ing up a burglary conviction that turns out not to be a burglary conviction and then bringing out to the jury that it started out as a burglary conviction but that it wound up as a property destruction." Defense counsel moved for a mistrial. The prosecutor informed the court that a "rap sheet" which he had in his possession showed that the conviction was for burglary. The trial court said, "The rap sheet does show a burglary conviction, not a property destruction." The court sustained the objection but overruled the motion for mistrial.

During the prosecutor's closing argument the following occurred:

"PROSECUTOR: And you've heard from Rusty. Mr. Hadley, and I'm not going to call him Rusty, I'm going to refer to him as Mr. Hadley. He's 23 years old, he's a man. He's got four prior convictions. One in Hawaii, one in Missouri in Joplin, one in Texas ... one in Oklahoma I mean, and one up in Kansas City. He's at least a four-time loser. He's got plenty of reason to come in here and lie to you. *He's a burglar, he knows how to get into places.*

DEFENSE COUNSEL: Objection. May we approach the bench please?

(out of the hearing of the jury)

DEFENSE COUNSEL: Your Honor, that's totally improper argument. You can only use a prior conviction as to whether or not he's telling the truth or not, not for substantive evidence of whether or not he's guilty of this crime.

THE COURT: The objection will be sustained.

DEFENSE COUNSEL: I make a motion for a mistrial, Your Honor.

THE COURT: That'll be overruled."

The fact that defendant was a convicted burglar was first made known to the jurors during voir dire examination of the veniremen by defense counsel. During that examination defense counsel informed the veniremen that "Mr. Hadley has been convicted of burglary and stealing." Defense counsel repeated that statement twice.

Defendant testified, on direct examination and prior to the two incidents complained of, that he had criminal convictions

for "burglary and stealing and grand larceny in Oklahoma" and "public drunk and property destruction." During cross-examination the defendant admitted that on February 13, 1985, he committed "the offense of burglary and the offense of stealing" in Kansas City.

The state concedes, at least tacitly, that the prosecutor acted improperly in both incidents. Although the objection to the improper question may have come too late to preserve the matter for appellate review, *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982), the trial court sustained the objection. With respect to the prosecutor's argument, the challenged statement— "He's a burglar, he knows how to get into places"—was improper and the trial court so ruled but denied the motion for mistrial. In neither instance did defense counsel request curative relief, in addition to the sustention of the objections, other than "the harsh remedy of mistrial." *State v. Williams*, 700 S.W.2d 541, 543 (Mo.App. 1985).

The determination of whether to declare a mistrial rests largely in the discretion of the trial court, *State v. Escoe*, 548 S.W.2d 568, 571 (Mo. banc 1977), and the trial court's decision will not be disturbed "unless it is found that the trial court abused its discretion," *State v. Beasley*, 731 S.W.2d 255, 257 (Mo.App.1986).

The trial court had the opportunity to reconsider its rulings with respect to the motions for mistrial when it ruled on defendant's motion for a new trial and it did not alter its position. At that time the court stated that he would have instructed the jury to disregard the prosecutor's comments, in addition to sustaining the objections, if defense counsel had so requested. With regard to the improper question the court said, "I didn't feel like it really had much effect on the jury." With respect to the improper argument the court said, "It just didn't appear to me that the effect on the jury was substantial and I just didn't feel that a mistrial was justified."

This court's review of the entire record leads it to the conclusion that the trial

court did not abuse its discretion in denying the two motions for mistrial. Defendant's fifth point has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.